

| DWAYNE RODNEY WOODRUFF, | § | No. 08-19-00141-CR |
| Appellant, | § | Appeal from the |
| v. | § | 384th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (20170D02504) |

## O P I N I O N

Appellant, Dwayne Woodruff, challenges his conviction of murder. TEX.PENAL CODE ANN. § 19.02(c). In three issues, Appellant asserts trial court error and seeks reversal. In Issues One and Two, Appellant asserts charge error for the trial court's alleged improper comment on the weight of the evidence and inclusion of a provocation instruction over his objection. In Issue Three, Appellant challenges the legal sufficiency of the jury's rejection of his self-defense theory. We affirm.

## BACKGROUND

### *Factual Background*

In March of 2017, Appellant and James Eberhardt, the deceased, had an altercation in the parking lot of an apartment complex. The only eyewitness to the altercation, Jessica Kerce, testified at trial. Kerce knew both Appellant and Eberhardt and testified she saw the two arguing in the parking lot. According to Kerce, Appellant was throwing clothes out of a vehicle she

recognized as Appellant's. Kerce did not know what exactly the two were arguing about, but stated Appellant wanted Eberhardt out of his car and away from him. Kerce then saw Appellant drive off in his car and recalled hearing Eberhardt say something along the lines of, "Ow, my hand." At this point, Kerce claimed Appellant stopped and got out of his vehicle to "check." Eberhardt was not hurt and looked visibly fine to Kerce; she then turned around and asked her child's father to intervene because she did not want the cops involved. After asking her child's father to put an end to the altercation, she turned back around and saw Eberhardt on the ground bleeding. When Kerce neared Eberhardt, he told her to the call the cops because he needed help, but according to Kerce, "by then it was too late already."

A resident of the apartment complex, Tony Juhan, saw Eberhardt covered in blood and moaning; Juhan called 911. Eberhardt died in the ambulance en route to the hospital.

Upon speaking to authorities, Kerce told the police it was Appellant who killed Eberhardt. Kerce provided a physical description of Appellant and said he was driving a silver PT Cruiser with tinted windows. From the inception of the altercation, Kerce recalled hearing Appellant repeatedly say "I don't give a fuck." Kerce did not see how exactly Eberhardt was hurt and did not see either of the men with a weapon.

A dispatch was broadcasted referencing a gray/silver PT Cruiser driven by Appellant, who was suspected of having stabbed Eberhardt. El Paso Police Department Officers Jeffrey Bell and Saul Gutierrez were on patrol duty and heard the dispatch. They passed a vehicle matching the description and pulled the silver PT Cruiser over. Appellant was driving and was accompanied by a female passenger. As the officers approached the vehicle, Appellant said, "I did it because he broke into my house." Appellant told the officers he had a knife and officers confirmed a knife located in the center console of the car. Another officer, Juan Campos, later arrived at the scene

2

and recalled Appellant being upset and telling the officers, "I told you I was the one you were looking for" and/or "Why did you tell him my name? I told you my name, motherfucker. Why are you telling him? I told you I was the one you were looking for," and when the officers looked inside the vehicle, Appellant said, "I told you that was the knife. I already told you what happened." Appellant also told officers, "I took care of mine. He was up in my shit, so I took care of it."

Cathey Serrano, DNA forensic scientist with the El Paso Crime Lab, tested the evidence found in Appellant's vehicle. From her findings, Eberhardt's DNA was found on the blade of the knife and on a pair of shorts located in Appellant's vehicle. Dr. Janice Diaz-Cavalliery, El Paso County Deputy Medical Examiner, performed Eberhardt's autopsy and distinguished five injuries inflicted by an object with a sharp edge. Dr. Diaz-Cavalliery determined Eberhardt's cause of death was a combination of all the sharp injuries, including penetration of the gallbladder, the kidney, and the brachial and peroneal arteries.

### *Procedural Background*

Appellant was indicted of murder. TEX.PENAL CODE ANN. § 19.02(c). Following a trial, the jury returned a guilty verdict, and the trial court imposed a thirty-five-year sentence in the Texas Department of Criminal Justice Institutional Division. This appeal followed.

## DISCUSSION

Appellant appeals from a jury verdict finding him guilty of murder. TEX.PENAL CODE ANN. § 19.02(c). In three issues, Appellant challenges his conviction asserting charge error and maintains the evidence is legally insufficient.

## CHARGE ERROR

3

In Issue One, Appellant argues the trial court erred by including what he alleges is an impermissible comment on the weight of the evidence in the jury charge. In Issue Two, Appellant challenges the inclusion of what he characterizes as a provocation instruction in the jury charge.

### *Standard of Review & Applicable Law*

Article 36.19 of the Texas Code of Criminal Procedure governs the standard for reversal on appeal in Texas regarding the requirements of Article 36.14, which relate to the charge of the court. TEX.CODE CRIM.PROC.ANN. art 36.19. The judgment shall not be reversed unless the error appearing from the record was "calculated to injure the rights of [the] defendant." TEX.CODE CRIM.PROC.ANN. art 36.19.

In reviewing charge error, we must first determine whether error actually exists, then evaluate whether the error was harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If error exists, the harm analysis differs depending on whether the charge was timely and properly objected to. *Id*. at 171. When there is a proper trial level objection, jury charge error requires reversal when the reviewing court finds "some harm" to the accused's rights. *Id*. When no proper objection was made at trial, reversal is required only if the error is egregious and created such a harm that it deprived the accused of a fair and impartial trial. *Id*. at 171. In both instances, the actual degree of harm must be reviewed in light of the entire jury charge, the state of the evidence—including the contested issue and weight of the probative evidence—the argument of counsel, and any other relevant information revealed by the record as a whole. *Id*.

### *Issue One Analysis*

In Issue One, Appellant alleges the trial court committed reversible error, claiming the inclusion of retreat language in the charge harmed his defensive theory.

As a general rule, a jury charge should set forth the law applicable to the case; "it should

4

not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any argument in its charge calculated to arouse the sympathy or excite the passions of the jury." *Barlett v. State*, 270 S.W.3d 147, 150 (Tex.Crim.App. 2008). An instruction that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App. 1986).

Appellant contests the charge, specifically, paragraphs X and XI. Paragraph X of the charge referenced a general duty to retreat and reads as follows:

> Now if you find . . . viewed from the standpoint of [Appellant] that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of James Eberhardt . . . and that acting under such apprehension, he reasonably believed that the use of deadly force on his part was immediately necessary to protect him against James Eberhardt or others' if any, use or attempted use of unlawful deadly force, and he stabbed the said James Eberhardt and *that a reasonable person in defendant's situation would not have retreated*, then you should acquit the defendant on the grounds of self[-]defense; or if you have reasonable doubt as to whether or not the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the benefit of that doubt to defendant and find him not guilty. [Emphasis added].

Paragraph XI of the charge further stated:

> If you find from the evidence beyond a reasonable doubt (1) that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury; (2) that *a reasonable person in defendant's situation, at such time and place, would have retreated before using deadly force against James Eberhardt*; or (3) that defendant, under the circumstances, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against James Eberhardt or others, if any, use or attempted use of unlawful deadly force, if any, as viewed from defendant's standpoint, at the time, then you must find against the defendant on the issue of self-defense. [Emphasis added].

Appellant maintains these paragraphs are not authorized by statute and constitute comments on the weight of the evidence. According to Appellant, the improper self-defense instruction enabled him from fully developing his legal entitlement to an acquittal, and as such, because his entire case was

5

dependent on self-defense, Appellant claims he was harmed by the instructions.

*a.) Actual Harm*

Step one of the *Almanza* standard requires we first determine whether actual error exists. *Almanza*, 686 S.W.2d at 171. In 2007, the Texas Legislature enacted Sections 9.32(c) and (d) to the Penal Code, which provides that a person does not have a legal duty to retreat under certain circumstances. *See* TEX.PENAL CODE ANN. § 9.32(c) and (d). There is generally no duty to retreat, unless the defendant provoked the person against whom force was used or if the defendant was engaged in criminal activity at the time. *Morales v. State*, 357 S.W.3d 1, 5 (Tex.Crim.App. 2011). When the provisions do not apply and the person has a duty to retreat, the failure to retreat may be considered in determining whether a defendant reasonably believed his conduct was immediately necessary to defend himself, and a prosecutor can argue the failure to retreat as a factor relevant to the defensive issue. *Id*. However, as the Court of Criminal Appeals stated, this does not mean the trial court should submit a jury instruction regarding a general duty to retreat. *See id.* "[S]pecial, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *See Walters v. State*, 247 S.W.3d 204, 211 (Tex.Crim.App. 2007). Accordingly, because the trial court included an instruction regarding a general duty to retreat, which also does not conform to the current statute, we find error. *Morales*, 357 S.W.3d at 6 (holding "the trial court erred in submitting the italicized portions of the jury charge set out above because those instructions were not authorized by statute and they constituted comments on the weight of the evidence").

*b.) Harm Analysis*

Finding actual error, we now determine the degree of harm. The harm analysis depends on whether the charge was timely and properly objected to. *Almanza*, 686 S.W.2d at 171. To preserve

error for appellate review, the record must show the complaint was made to the trial court by a timely objection that stated the grounds for the ruling sought with sufficient specificity unless those grounds are apparent, and the trial court ruled or refused to rule on the objection. TEX.R.APP.P. 33.1(a). In the instant case, at the charge conference, neither party objected to the "retreat" language in the jury charge. The only request referencing a duty to retreat was during the defense's motion in limine. However, a ruling on a motion in limine preserves nothing for appellate review. *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex.App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998). Thus, because no proper objection was made at trial, reversal is required only if the error is egregious and created such a harm that it deprived Appellant of a fair and impartial trial. *Almanza*, 686 S.W.2d at 171.

The State argues any error was harmless because Appellant was not entitled to a self-defense instruction to begin with. We agree.

"A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001). A defense is supported by the evidence if there is some evidence, from any source, on *each element* of the defense that would support a rational inference by a reasonable jury that that element is true. *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex.Crim.App. 2007). However, if the evidence, when viewed in the light most favorable to the defendant, does not establish self-defense on each element, the defendant is not entitled to an instruction on the issue. *Ferrel*, 55 S.W.3d at 591. Furthermore, the burden is on the defendant to produce some evidence supporting the justification of self-defense. *See Lay v. State*, 359 S.W.3d 291, 297 (Tex.App.— Texarkana 2012, no pet.).

The Texas Court of Criminal Appeals has long held that the "reasonable belief" standard in the self-defense statutes (TEX.PENAL CODE ANN. §§ 9.31 and 9.32) includes both subjective and objective components. *See Werner v. State*, 711 S.W.2d 639, 645 (Tex.Crim.App. 1986) ("Although the test assumes that a defendant may act on appearances as viewed from his standpoint . . . the test also assumes the 'ordinary prudent man test of tort law.'"). Accordingly, to justify submission of a jury charge on the issue of self-defense, there must be some evidence in the record that shows: (1) Appellant's subjective state of mind—whether he had some apprehension or fear of being the recipient of the unlawful use of force from another, *see Smith v. State*, 676 S.W.2d 584, 585 (Tex.Crim.App. 1984), and that; (2) Appellant's subjective apprehension of fear was objectively reasonable—the ordinary prudent-person standard. *See Werner*, 711 S.W.2d at 645.

Here, there is no evidence of Appellant's subjective state of mind—neither from Appellant himself nor from any other source. From our review of the record, we are unable to conclude Appellant had an immediate apprehension or fear that Eberhardt was about to use unlawful force or deadly force. The only eyewitness, Kerce, testified she did not see Eberhardt holding a weapon; in fact, she "didn't see a weapon at all" and did not see the entirety of the altercation, specifically, the actual stabbing of Eberhardt, because she kept going in and out of her apartment. The State called several witnesses ranging from responding officers, to Kerce—again, the only eyewitness— to the deputy medical examiner, the DNA forensic scientist, and residents of the apartment complex where the murder occurred. Not one of these witnesses offered any testimony shedding light as to Appellant's state of mind. Appellant also did not testify and offered no witnesses on his behalf. What we know is Appellant and Eberhardt had a verbal argument in a parking lot, Appellant was seen throwing clothes out of his vehicle, and Eberhardt was stabbed to death. No one saw the actual stabbing, and neither Appellant nor Eberhardt was seen with a weapon. Thus, the record

8

fails to establish Appellant had an apprehension or fear of being the recipient of the unlawful use of force or deadly force from another. *Hernandez v. State*, 946 S.W.2d 108, 114 (Tex.App.—El Paso 1997, no pet.)("Even if appellant's testimony is accepted as true, neither self-defense nor defense of a third person is raised. Appellant offered no evidence that either of the victims had a weapon or attempted to use deadly force. Absent this showing, the accused is not entitled to a jury instruction on self-defense.").

Furthermore, even if we did have insight into Appellant's state of mind, the apprehension of fear must have been objectively reasonable in light of the fact that according to the eyewitness, the altercation was a verbal argument. The use of deadly force is justified against another if (1) the actor would be justified in using force against another under Section 9.31; and (2) when the actor reasonably believes deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *See* Tex.Penal Code Ann. §§ 9.31 and 9.32. Again, we simply do not have evidence from the record, or even evidence we would render "weak," to support Appellant's affirmative defense he was justified in using deadly force against Eberhardt.

Because Appellant was not entitled to a self-defense instruction, he did not suffer egregious harm by the court's inclusion of retreat language in the charge. *Torres v. State*, No. 08-13-00027-CR, 2016 WL 5404773, at *3 (Tex.App.—El Paso Sept. 28, 2016, pet. ref'd)(not designated for publication)(holding "Appellant was not entitled to a self-defense instruction, and any defect in the instruction actually given was harmless."); *see also Burks v. State*, 40 Tex.Crim. 167, 49 S.W. 389, 391 (Tex.Crim.App. 1899)(holding "while the court's charge was erroneous when it attempted to limit or cut off the right of self-defense, yet there was no self-defense in this case, and the error was harmless.").

Issue One is overruled.

### Issue Two Analysis

In Issue Two, Appellant further argues the trial court committed reversible charge error by the inclusion of a provocation instruction.

In addition to the law on self-defense discussed in Issue One, there are limitations on a defendant's right to self-defense, namely, what is referred to as provocation. *See Elizondo v. State*, 487 S.W.3d 185, 196 (Tex.Crim.App. 2016). The law of provocation stands for the proposition that, "if the defendant provoked another to make an attack on him, so that the defendant would have a pretext for killing the other under the guise of self-defense, the defendant forfeits his right of self-defense." *Smith*, 965 S.W.2d at 512; *see also* TEX.PENAL CODE ANN. § 9.31(b)(4). The Court of Criminal Appeals held that three elements must be met with sufficient evidence before a charge on provocation is required: (1) that the defendant did some act or used some words that provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done, or the words were used for, the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Smith*, 965 S.W.2d at 513. The court further held an instruction on provocation is only warranted when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt. *Id.* at 514.

To determine whether a provocation instruction was proper, an appellate court, viewing the evidence in the light most favorable to giving the instruction, asks whether there was sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt. *See id*. However, an instruction under Section 9.31(b)(4) is separate and distinct from an instruction under Section 9.31(b)(1). *See* TEX.PENAL CODE ANN. § 9.31(b)(1), (4).

*a.) Actual Harm*

At the charge conference, Appellant objected to the language of the jury charge that read, "The use of force is not justified: Section (1) in response to verbal provocation alone." Appellant objected on the basis the three *Smith* elements were not proved beyond a reasonable doubt to warrant the inclusion of the provocation instruction. The trial court overruled the objection, explaining:

> I believe this is going to not necessarily that the defendant provoked it; that it goes to the decedent having used words to justify the use of force. I mean, the way you argued it, the provocation is me provoking you to attack me, and then me going at you.
>
> .        .        .
>
> And that I can't use it as a defense if I provoked you. But I believe this is going to the issue of whether the decedent used words and that the defendant responded with violence. So your argument is noted for the record, but that's what I believe it's being offered for, and that's what will be argued before this jury. It will not be argued as you have stated for the record.

Now on appeal, the State argues review of the record shows the complained-of instruction was not a "provocation" instruction, but rather, tracked the statute and was not erroneous. We agree.

The trial court instructed the jury on Section 9.31(b)(1), which regulates when the use of force is not justified and forfeits the defensive theory of self-defense. *See* TEX.PENAL CODE ANN. § 9.31(b)(1). The record reveals that prior to the stabbing, Appellant and Eberhardt were arguing; however, the record is silent as to what was said during the argument and whether physical or verbal threats were made. Given these facts, the trial court properly tracked the language of the Penal Code in instructing the jury that the use of force against another is not justified in response to verbal provocation alone. *See Malone v. State*, 405 S.W.3d 917, 927 (Tex.App.—Beaumont 2013, pet. ref'd) ("A jury charge that tracks the language of a particular statute is a proper charge" and "[b]ecause the jury charge tracked the applicable statutory language, we conclude that the

11

charge was not erroneous."). Our sister court in Beaumont ruled on the same issue as applied to a provocation instruction within the jury charge. *Sanchez v. State*, No. 09-18-00163-CR, 2020 WL 1696012, at \*6-7 (Tex.App.—Beaumont Apr. 8, 2020, pet. ref'd)(mem.op., not designated for publication). In *Sanchez*, the appellant argued the trial court erred in denying his request to strike language in the jury instruction pertaining to a verbal provocation instruction. *Id*. at \*6. The court held there was no charge error because the charge tracked the statutory language, which derived directly from Sections 9.31(b) and 9.32, and did "not contain superfluous language outside of the statute . . . ." *Id*. at \*7.

Similarly, here, the language Appellant complains of, "The use of force is not justified: Section (1) in response to verbal provocation alone," mirrors the language of Section 9.31(b)(1), word for word. *See* TEX.PENAL CODE ANN. § 9.31(b)(1)("The use of force against another is not justified: (1) in response to verbal provocation alone[.]"). The trial court's charge must fully instruct the jury on the law applicable to the case and here, the complained-of instruction derived directly from the applicable statute and did not constitute error. *See Malone*, 405 S.W.3d at 926; *see also Quintana v. State*, 777 S.W.2d 474, 478 (Tex.App.—Corpus Christi 1989, pet. ref'd)(a jury instruction "that the use of force by a defendant against another is not justified if in response to verbal provocation alone" is not a charge on provoking the difficulty and does not limit any self-defense instruction given).

Having found no charge error, we need not conduct a harm analysis.

Issue Two is overruled.

## LEGAL SUFFICIENCY

In Issue Three, Appellant asserts the evidence is legally insufficient to support the jury's rejection of his self-defense theory.

## *Standard of Review & Applicable Law*

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The critical inquiry in a legal sufficiency challenge is whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Id*. at 319.

When reviewing the legal sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014) (*citing Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the

13

essential elements of the crime beyond a reasonable doubt. *Id*.

***Analysis***

Appellant was charged with murder. TEX.PENAL CODE ANN. § 19.02(c). A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(1). Thus, a hypothetically correct jury charge would ask whether Appellant: (1) intentionally or knowingly caused the death of James Eberhardt; (2) by stabbing James Eberhardt with a knife. *Id*. In addition, Appellant particularly challenges the jury's rejection of his self-defense theory, claiming the evidence is insufficient. Appellant specifically phrases his complaint as, "Appellant Woodruff respectfully argues that analysis of the legally insufficiency of the evidence to support the jury's rejection of self-defense may be so conflated within the analysis of point of error one and point of error two that to attempt to address this issue independent of point of error one and point of error two would be futile and encapsulate the legal insufficiency analysis in an empty vessel." This is a conditional point of error. According to Appellant, the rejection of self-defense was so contrary to the weight of the evidence as to be clearly wrong and unjust.

Appellant lists facts and evidence adduced at trial that he claims support his self-defense theory; however, we may not reevaluate the weight and credibility of evidence, for the trier of fact is the sole judge and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *See Dobbs*, 434 S.W.3d at 170. Appellant merely refers us to the factual evidence presented to the jury at trial, which the jury used to reasonably deduce his guilt; without more from Appellant, we cannot conclude the evidence is insufficient. Furthermore, this point of error is entirely dependent on Issues One and Two, and because we overruled both issues, the weight of Issue Three's analysis fails as a conditional point of error.

14

In any case, the evidence was sufficient to support not only the jury's rejection of self-defense, but also Appellant's conviction. The evidence showed Appellant and Eberhardt had a verbal argument. As to what exactly was said, we do not know. The only eyewitness claimed she saw the two men arguing, then returned moments later to find Eberhardt lying on the ground in blood with several stab wounds. No weapons were found at the murder scene. The eyewitness told authorities it was Appellant who committed the stabbing and provided a description of Appellant and his vehicle. Shortly after, Appellant was stopped driving a vehicle that matched the provided description and admitted to the stabbing. Upon being stopped by the police, and among other self-incriminating statements, Appellant stated, "I did it because he broke into my house." Appellant did not have visible injuries, and the murder weapon and a pair of jean shorts were found in Appellant's vehicle. Further, those two items, the murder weapon and the jean shorts, contained Eberhardt's DNA.

Viewing the evidence in the light most favorable to the verdict, a rational fact finder could have found Appellant guilty of murder beyond a reasonable doubt. Pursuant to Sections 19.02(b)(1) and 19.02(b)(2), the stabbing of Eberhardt with a knife was meant to either cause death or serious bodily injury and constituted an act clearly dangerous to human life that caused death. *See* TEX.PENAL CODE ANN. § 19.02(b)(1), (b)(2). The State argues the jury was free to reject Appellant's self-defense theory and did so implicitly by its verdict. We agree. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991)(a jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory). We find the evidence sufficient to support Appellant's conviction, and the jury's rejection of self-defense.

Issue Three is overruled.

**CERTIFICATION OF RIGHT TO APPEAL**

15

We note that the trial court has certified Appellant's right to appeal in this case, but the amended certification does not bear Appellant's signature indicating that he has been informed of his rights to appeal and to file a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). We thus find that the certification is defective and that neither Appellant's attorney nor the trial court has corrected the defective certification.

To remedy this defect, the Court ORDERS Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a *pro se* petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. The Court further ORDERS Appellant's attorney to comply with all the requirements of Rule 48.4. TEX.R.APP.P. 48.4.

## CONCLUSION

For these reasons, we affirm.


August 18, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

16