**Modified and Affirmed and Opinion Filed June 13, 2023**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00060-CR

**RONNIE RAY DUGAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-2151250-Y**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Nowell

A jury convicted appellant Ronnie Ray Dugan of family-violence aggravated assault with a deadly weapon. Appellant and the State agreed to a twenty-five-year sentence. After pleading true to two enhancement paragraphs, the trial court sentenced appellant to twenty-five years' confinement. In a single issue, appellant argues the evidence is legally insufficient to support his conviction and the rejection of his self-defense claim. The State raises two cross-points requesting modification of the judgment. As modified, we affirm the trial court's judgment.

## Background

Appellant and complainant had a difficult dating relationship. They often engaged in verbal altercations in which appellant tried to provoke complainant in various ways, often by insulting her young son. Appellant was mentally abusive and called her dumb and "country slow."

In December 2020, appellant and complainant got into an argument, and she told appellant, "You hit me again, I'm going to cut your ass." She showed him a knife, he tried to leave the car, and she cut his buttocks. Appellant went to the hospital the next day for stitches.

On the evening of January 8, 2021, appellant and complainant were driving back to their apartment in Dallas with her son and his two sons. Appellant started an argument with complainant, but she tried to disengage and remain calm. When they got to the apartment, appellant told her, "It's on now, Bitch." She responded, "Well, come on." Appellant hit her and knocked her to the ground. She lay on the ground until he walked away. He then tried to grab her phone from he son, and she "got on top of [appellant] and started hitting him and kicking him, and I wouldn't stop." She wanted to take the children and leave, but the children wanted to stay. She decided to stay and went inside the apartment. Appellant and complainant continued to argue, and she eventually went to the bathroom and shut the door. Complainant admitted to "talking shit" through the door. She told appellant, "If I open this door, I'm not playing, I'm going to fuck you up." She had a knife, but she

–2–

did not remember using it or threatening him with it. She explained appellant "pushed the door open, waiting to talk but seen my knife, and all I seen was fear in his eyes." She said, "He poked me . . . I think I might have nipped his hand." Appellant then attacked complainant and stabbed her multiple times.

Officer Freston was working dispatch at 2:12 a.m. on January 9, 2021, when he received a call regarding a domestic disturbance. He described the caller as "frantic" and wanted police to get there quickly. Officer Fitzgerald and Officer Lawson arrived on the scene at 2:45 a.m.

Officer Fitzgerald knocked on the apartment door several times and waited approximately two minutes before appellant answered. Officer Fitzgerald described appellant as "startled," "puzzled," and "hesitant" to open the door. Appellant cracked the door and told officers everything was okay. Because it was a domestic disturbance call, Officer Fitzgerald asked to speak to the woman inside. He then heard a moan and someone asking for help. He went inside, noticed children in the living room, a trail of blood in the hallway, and a woman's body halfway inside a bedroom. Appellant claimed she had an accident and fell. Complainant told officers she had been stabbed in her chest and thigh but did not know by whom (she later identified appellant). She believed she had been bleeding out for an hour. Officers asked appellant why he did not call an ambulance, and he said, "I was about to." Complainant spent three days in the hospital recovering from her stab wounds and a pierced lung.

The State indicted appellant for "intentionally, knowingly, and recklessly caus[ing] serious bodily injury . . . by cutting and stabbing complainant with a knife," a deadly weapon, while in a dating relationship. The jury rejected self-defense and found appellant guilty. This appeal followed.

**Standard of Review and Applicable Law**

We review sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). Legal sufficiency is measured according to a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theory of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

In our review, we view the evidence in the light most favorable to the verdict to determine whether any rational finder of fact could have found (1) the essential elements of the offense beyond a reasonable doubt and (2) against appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc). We defer to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record contains

–4–

conflicting inferences, we presume the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 326); *see Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc) (noting jury "can choose to believe all, some, or none of the testimony presented by the parties").

"A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). A "reasonable belief" is defined as one that would be held by "an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(12).

However, self-defense is not available to a defendant if the defendant provoked another individual's use of unlawful force, unless: (1) the defendant abandoned the encounter, or clearly communicated to the other his intent to do so reasonably believing he could not safely abandon the encounter; and (2) the other nevertheless continues or attempts to use unlawful force against the defendant. *Id.* § 9.31(b)(4); *see Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016) ("defendant may forfeit his right to self-defense if he provokes the attack").

The defendant bears the burden of production and must bring forth some evidence to support his self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defense is raised, the State bears the burden of

persuasion to disprove the defense; however, such a burden requires only that the State prove its case beyond a reasonable doubt. *Id.* The State is not required to produce additional evidence rebutting self-defense. *Id.* The issue of self-defense is a fact issue the jury determines, and the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 914. When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594.

## Hypothetically Correct Jury Charge

Although not raised by appellant, the State contends the jury charge was incorrect in two ways: (1) it included an instruction of a general duty to retreat; and (2) it failed to include a provocation instruction. Because legal sufficiency is measured according to a hypothetically correct jury charge, we consider the State's arguments regarding the charge. *See Villarreal*, 286 S.W.3d at 327.

The jury charge included language instructing the jury, in relevant part, that it should acquit appellant if "a reasonable person in defendant's situation at the time would not have retreated." Before 2007, the deadly-force self-defense statute provided for a general duty to retreat, but that duty was removed from the statute effective September 1, 2007. *Lozano v. State*, 636 S.W.3d 25, 31 (Tex. Crim. App. 2021); *Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011). Because this language should not have been included in the charge, we will not consider it in our sufficiency analysis.

An instruction on provocation is required when there is some evidence from which a rational jury could find beyond a reasonable doubt that: (1) the defendant did some act or used some words which provoked the attack on him; (2) such act or words were reasonably calculated to provoke the attack; and (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998) (en banc); *see also Elizondo*, 487 S.W.3d at 196.

The evidence shows appellant instigated an argument on the car ride home. When they got to the apartment, he said, "It's on, bitch," and then physically assaulted complainant. She went to the bathroom, and they continued arguing through the closed door. The argument intensified to the point that she warned appellant to stay away. Thus, appellant used some words and acted in a way that provoked the attack on him, which satisfied the first element of provocation. Calling complainant a bitch and assaulting her was some evidence of acts "reasonably calculated to cause an attack," which satisfied the second element of provocation. Finally, given appellant and complainant's history of dating violence, appellant knew fighting with complainant would likely cause her to retaliate; therefore, this is some evidence his actions were structured as a pretext to harm her under the guise of self-defense.

A hypothetically correct jury charge would have included an instruction on provocation. *See Smith*, 965 S.W.2d at 513. Therefore, our legal sufficiency

analysis shall consider whether the jury could have rejected appellant's self-defense claim based on provocation.

## Legal Sufficiency of the Evidence

Appellant argues the evidence is legally insufficient to support his conviction and the jury's implied rejection of his self-defense claim because when complainant confronted him wielding a knife, he believed it was immediately necessary to protect himself against imminent harm. The State responds the evidence is legally sufficient to support his conviction.

Appellant's self-defense claim is premised on complainant's threat while in the bathroom that, "If I open this door, I'm not playing. I'm going to fuck you up," and her "nipping" him with a knife. He argues a reasonable and prudent person in the same position, who had previously been stabbed by complainant, could form a reasonable belief his actions were necessary to defend himself.

When viewed in the light most favorable to the verdict, the evidence shows appellant often instigated fights with complainant and was aware of her retaliatory responses. On the night in question, appellant instigated a fight; however, complainant tried to "chill out" and not engage. When they arrived at the apartment, appellant continued to verbally and physically fight with her. Complainant again tried to diffuse the situation by going to the bathroom, but appellant continued to argue through the door. Despite complainant's warning to leave her alone, appellant opened the door. Given the evidence, a rational jury could conclude appellant did

not reasonably believe his actions were immediately necessary to protect himself from complainant. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(12), 9.31(a).

In reaching this conclusion, we recognize complainant testified she was the aggressor; however, complainant also testified she was not willingly testifying for the State, and she did not want appellant to go to jail. She explained she wanted the charges to go away. The jury could assess her credibility, and we assume the jury resolved any conflict in the testimony in favor of the State. *See Padilla*, 326 S.W.3d at 200.

Further, under a hypothetically correct jury charge, as detailed in the previous section, the jury could also have concluded appellant provoked complainant thereby forfeiting his right of self-defense. *See Elizondo*, 487 S.W.3d at 198. Moreover, the jury could have concluded appellant's actions after the attack were inconsistent with self-defense and instead showed a consciousness of guilt. *See, e.g.*, *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (en banc) (recognizing jury may consider evidence showing consciousness of guilt in sufficiency review of self-defense claim). He did not call for help, but instead left complainant bleeding in the hallway while the children watched television nearby. *See, e.g.*, *Bartley v. State*, No. 03-18-00009-CR, 2019 WL 3436989, at *4 (Tex. App.—Austin July 31, 2019, pet. ref'd) (mem. op., not designated for publication) (considering, among other things, appellant's failure to call police after stabbing victim as evidence of consciousness of guilt negating self-defense claim). When officers finally arrived, he delayed

opening the door and said everything was fine despite officers hearing moans for help. *See, e.g.*, *Lacy v. State*, No. 11-14-00166-CR, 2016 WL 3382496, at *3 (Tex. App.—Eastland June 16, 2016, pet. ref'd) (mem. op., not designated for publication) (actions to cover up incident indicated a consciousness of guilt).

Viewing the evidence in the light most favorable to the verdict, we conclude the State provided legally sufficient evidence from which a rational jury could have found, beyond a reasonable doubt, all the elements of family-violence aggravated assault with a deadly weapon and also could have found against appellant on his self-defense claim beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914; *see Elizondo*, 487 S.W.3d at 196. We overrule appellant's first issue.

### Modification of the Judgment

The State raises two cross-points seeking modification of the judgment. The State first requests we modify the judgment to reflect appellant pleaded "true" to both enhancement paragraphs and to correct the "Total Jail Time Credit" from "364 years" to "364 days." The State next requests we modify the judgment to include an affirmative family-violence finding.

We have the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). Appellant pleaded true to both enhancement paragraphs during sentencing. Further, it is impossible that appellant

served 364 years of presentence jail time; therefore, the reference is a typographical error. The record supports the requested modifications; therefore, we agree with the State the judgment should be corrected. *See Blais v. State*, No. 05-20-00556-CR, 2021 WL 2010269, at *2 (Tex. App.—Dallas May 20, 2021, no pet.) (mem. op., not designated for publication).

We modify the judgment to remove "N/A" under the "1st Enhancement Paragraph" and "2nd Enhancement Paragraph" and replace with "PLEADED TRUE." *See, e.g.*, *Gutierrez v. State*, No. 05-6-00755-CR, 2017 WL 2351346, at *1 (Tex. App.—Dallas May 31, 2017, pet. ref'd) (mem. op., not designated for publication) (modifying judgment to correct plea to enhancement paragraph). We further modify the judgment to remove "364 YEARS" under "Total Jail Time Credit" and replace with "364 DAYS." *See, e.g.*, *Boyce v. State*, No. 08-21-00178-CR, 2022 WL 1536770, at *2 (Tex. App.—El Paso May 16, 2022, no pet.) (mem. op., not designated for publication) (modifying judgment to reflect correct number of days for jail time credit). We sustain the State's first cross-point.

The State next requests we modify the judgment to include an affirmative-family violence finding as required by Texas Code of Criminal Procedure article 42.013, which states, "In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. art. 42.013.

The trial court has no discretion in the matter. *See Price v. State*, No. 05-20-00415-CR, 2022 WL 131043, at \*6 (Tex. App.—Dallas Jan. 14, 2022, no pet.) (mem. op., not designated for publication).

"Family violence" includes dating violence as defined by section 71.0021, which includes "an act, other than a defensive measure to protect oneself, by an actor that (1) is committed against a victim . . . with whom the actor has or has had a dating relationship . . . and (2) is intended to result in physical harm, bodily injury, assault," among other things. TEX. FAM. CODE ANN. § 71.0021(a). "Dating relationship" means "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *Id.* § 71.0021(b).

Aggravated assault with a deadly weapon is an offense against the person under Title 5. *See* TEX. PENAL CODE ANN. § 22.02(b). Here, the indictment alleged that appellant "has and has had a dating relationship with the said complainant." The record indicates appellant and complainant started dating in June 2020 and maintained a relationship at the time of the assault. Further, the trial court made an affirmative finding of family violence on the record during sentencing. Therefore, we sustain the State's second cross-point and modify the judgment to add an affirmative finding of family violence under article 42.013 of the code of criminal procedure in the "Special Findings" section of the judgment. *See Price*, 2022 WL 131043, at \*6 (modifying judgment to include affirmative finding of family violence).

## Conclusion

As modified, we affirm the trial court's judgment.

        /Erin A. Nowell//

ERIN A. NOWELL
JUSTICE

220060f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RONNIE RAY DUGAN, Appellant

No. 05-22-00060-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas Trial Court Cause No. F-2151250-Y. Opinion delivered by Justice Nowell. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is MODIFIED as follows:

Under the "1st Enhancement Paragraph," "N/A" is deleted and replaced with "PLEADED TRUE";

Under the "2nd Enhancement Paragraph," "N/A" is deleted and replaced with "PLEADED TRUE";

Under "Total Jail Time Credit," "364 YEARS" is deleted and replaced with "364 DAYS."

In the "Special Findings" section, the following language is added: "The Court enters an affirmative finding that Defendant's offense involved family violence, as defined by Section 71.004, Family Code."

Judgment entered this 13th day of June, 2023.